J-S08006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BARULIO PEREZ, | |
| Appellant | No. 689 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 29, 2018
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000579-2017

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and STEVENS,  P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED APRIL 25, 2019**

Appellant, Barulio Perez, appeals from the judgment of sentence of an aggregate term of 3½ to 8 years' incarceration, imposed after he was convicted of possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30), criminal conspiracy to commit PWID, 18 Pa.C.S. § 903(a), and possession of a controlled substance, 35 P.S. § 780-113(a)(16). We affirm.

Appellant was convicted of the above-stated charges following a jury trial.  On January 29, 2018, the trial court sentenced him to the aggregate term stated *supra*.  Appellant filed a post-sentence motion *nunc pro tunc* on

---

[*] Former Justice specially assigned to the Superior Court.

February 26, 2018, which the court accepted, but ultimately denied on February 27, 2018.

Appellant then filed a timely notice of appeal, and he also timely complied with the trial court's order directing him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court subsequently issued a Rule 1925(a) opinion, stating that it was relying on the opinion it had issued in conjunction with its February 27, 2018 order denying Appellant's post-sentence motion.

Herein, Appellant states two issues for our review:

A. Whether the evidence was sufficient to sustain [Appellant's] convictions for [PWID] and conspiracy to [commit PWID]?

B. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] was properly convicted of [PWID] and conspiracy to [commit PWID]?

Appellant's Brief at 7.

In assessing Appellant's issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the February 27, 2018 opinion of the Honorable Maria L. Dantos of the Court of Common Pleas of Lehigh County. We conclude that Judge Dantos's extensive, well-reasoned opinion accurately disposes of the issues presented by Appellant. *See* Trial Court Opinion (TCO), 2/27/18, at 1-14.

Accordingly, we adopt that portion of her opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.[1]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/19

---

[1] Judge Dantos also addresses a sentencing claim that Appellant presented in his post-sentence motion and Rule 1925(b) statement. **See** TCO at 14-17. However, Appellant has abandoned that sentencing issue on appeal and, thus, we do not adopt that portion of Judge Dantos's decision.

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA ) 
 ) 
vs. ) No. 0579/2017 
 ) 
BARULIO M. PEREZ, ) 
 Defendant )

\* \* \* \* \* \* \* \*

APPEARANCES:

TIMOTHY M. DOHERTY, ESQUIRE, 
ASSISTANT ATTORNEY GENERAL, 
 On behalf of the Commonwealth

KATHRYN SMITH, ESQUIRE, 
 On behalf of Defendant

\* \* \* \* \* \* \* \*

### OPINION

MARIA L. DANTOS, J.

Defendant, Barulio Perez, after a jury trial, was found guilty on December 15, 2017, of Possession With Intent to Deliver a Controlled Substance,[1] Criminal Conspiracy to Commit Possession With Intent to Deliver a Controlled Substance,[2] and Possession of a Controlled Substance.[3] Thereafter, on January 29, 2018, this Court sentenced the Defendant to the following: On the charge of Possession With Intent to Deliver a Controlled Substance to a term of imprisonment of not less than forty-two (42) months nor more than eight (8) years; on the count of Criminal Conspiracy to Possession With Intent to Deliver a Controlled Substance to a term of imprisonment of not less than

---

[1]    35 P.S. § 780-113(a)(30).

[2]    35 P.S. § 780-113(a)(30); 18 Pa. C.S.A. § 903(a).

forty-two (42) months nor more than eight (8) years, with these sentences running concurrently to each other. The charge of Possession merged with Possession With Intent to Deliver a Controlled Substance for sentencing purposes. Presently before this Court is Defendant's Post Sentence Motion Pursuant to Pennsylvania Rule of Criminal Procedure Rule 720. In his Post Sentence Motion, the Defendant challenges the sufficiency and weight of the evidence. Additionally, the Defendant requests that this Court reconsider and modify the sentence imposed.

## A. Challenging the Sufficiency of the Evidence

The Defendant asserts that the verdict was not supported by sufficient evidence. Defendant's assertion lack merit.

A claim challenging the sufficiency of the evidence is a question of law which asserts that there is insufficient evidence to support at least one material element of the crime for which the Defendant was convicted. Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003). The standard for reviewing sufficiency challenges was explained in the following manner by the Superior Court of Pennsylvania:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

Commonwealth v. Taylor, 831 A.2d 661, 663 (Pa. Super. 2003), *quoting* Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa. Super. 2001). In addition, the facts and circumstances established by the Commonwealth need not preclude every

---

3      35 P.S. § 780-113(a)(16).

2

possibility of innocence. <u>Commonwealth v. Hunzer</u>, 868 A.2d 498, 505 (Pa. Super. 2005). Any doubts regarding a defendant's guilt are properly resolved by the finder of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. <u>Id</u>. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. <u>Id</u>. If the finder of fact reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. <u>Id</u>. at 506.

In the instant case, the Defendant was found guilty of Possession of a Controlled Substance. This crime is defined as "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act." 35 P.S. §780-113(a)(16). Initially, the Commonwealth must establish that the Defendant possessed the controlled substance. <u>See</u> 35 P.S. § 780-113(a)(16). Because the drugs were not found on the Defendant's person, the Commonwealth must prove constructive possession. <u>Commonwealth v. Kirkland</u>, 831 A.2d 607, 610 (Pa. Super. 2003); <u>Commonwealth v. Aviles</u>, 419 Pa. Super. 345, 615 A.2d 398, 401 (1992); <u>Commonwealth v. Mudrick</u>, 510 Pa. 305, 507 A.2d 1212, 1213 (1986). "Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control." <u>Commonwealth v. Bricker</u>, 882 A.2d 1008, 1014 (Pa. Super. 2005), *citing,*

3

Commonwealth v. Petteway, 847 A.2d 713, 716 (Pa. Super. 2004). Elements of constructive possession of contraband may be inferred from the totality of the circumstances and may be proven by circumstantial evidence. Commonwealth v. Gray, 322 Pa. Super. 37, 469 A.2d 169 (1983), *affirmed*, 509 Pa. 476, 503 A.2d 921 (1985); Commonwealth v. Haskins, 450 Pa. Super. 540, 677 A.2d 328 (1996), *appeal denied*, 547 Pa, 751, 692 A.2d 563 (1997).

Furthermore, the jury found the Defendant guilty of Possession with Intent to Deliver a Controlled Substance and Criminal Conspiracy to Possession with Intent to Deliver a Controlled Substance. A person is guilty of Possession with Intent to Deliver a Controlled Substance under 35 P.S. § 780-113(a)(30) if he delivers or possesses with the intent to deliver, a controlled substance, and he is not registered under this act or licensed by the appropriate State board, or he knowingly creates, delivers or possesses with the intent to deliver a counterfeit controlled substance. 35 P.S. § 780-113(a)(30).

In addition, "[a] person is guilty of [C]onspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa. C.S.A. § 903(a)(1). It is axiomatic that a person may be held accountable for the criminal conduct of another where the Commonwealth can establish the existence of a conspiracy. 18 Pa. C.S.A. § 903(a)(1). Under conspirator liability, each conspirator is criminally responsible for the actions of his co-conspirators, as long as the acts are in furtherance of the conspiracy, even though one

4

does not perform the immediate act complained of. Commonwealth v. Robinson, 351 Pa. Super. 309, 505 A.2d 997 (1986). To prove the existence of a conspiracy the Commonwealth needs to show the defendant reached an agreement to commit or aid an unlawful act with another person and that an overt act was done in furtherance of the conspiracy. Commonwealth v. Rios, 546 Pa. 271, 684 A.2d 1025 (1996). "An explicit or formal agreement to commit a crime can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend the activities." Commonwealth v. Johnson, 719 A.2d 778 (Pa. Super. 1998), citing Commonwealth v. Kennedy, 499 Pa. 389, 395, 453 A.2d 927, 929 (1982), quoting, Commonwealth v. Strantz, 328 Pa. 33, 43, 195 A. 75, 80 (1937). Finally, a conspiracy may be inferred where it is demonstrated that the relation, conduct or circumstances of the parties and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. Commonwealth v. Woodward, 418 Pa. Super. 218, 226, 614 A.2d 239, 243 (1992).

In the instant case, the evidence presented at trial established that on or about December 9, 2016, Agent Mark Boyer and Agent David Carolina, narcotics agents with the Pennsylvania Office of the Attorney General, Bureau of Narcotics and Drug Control, were utilizing the services of a Confidential Informant to effectuate a controlled buy of heroin from a Hispanic male known as "Moreno," later identified as the Defendant, Barulio Perez. The Confidential Informant communicated with the Defendant via text messages. This initial communication established the meeting spot to be in a Kmart parking lot located at 1502 South 4th Street, Allentown, Lehigh County, Pennsylvania. Consequently, the narcotics agents set up surveillance in this area. Prior to meeting with the Defendant, Agent Boyer searched the Confidential

Informant and his vehicle[4] for currency and contraband. Nothing was located. The Confidential Informant was then driven to the predetermined location by Agent Ed Rodriguez. Agent Boyer followed the Confidential Information to the Kmart parking lot. At all times during this controlled buy, Agent Boyer kept the Confidential Informant in visual range to ensure the integrity of the transaction. Agent Boyer waited about 30 to 40 minutes, when a dark-colored Toyota Camry arrived in the McDonald's parking lot that is situated adjacent to the Kmart store. This vehicle, bearing a New York license plate, was observed driving slowly into the Kmart parking lot, and then leaving the lot. There were two (2) occupants in this vehicle. Surveillance also observed a second dark-colored Toyota Camry with a single occupant drive through the Kmart parking lot and then drive to a nearby gas station. This second vehicle also had a New York license plate.[5]

Almost immediately thereafter, the Confidential Informant was instructed by the Defendant that the location had changed, and that he was to meet a courier at the 7-11 located at 11 East Susquehanna Street, Allentown, Pennsylvania, Lehigh County.[6] (C. Ex. 2); (C. Ex. 3); (C. Ex. 4); (C. Ex. 5). As part of this controlled buy, surveillance was established around the 7-11.[7] (C. Ex. 2); (C. Ex. 3); (C. Ex. 4); (C. Ex. 5). Surveillance units observed two (2) Toyota Camry sedans arrive at this newly-established location. It was noted that both Toyota vehicles had New York registration

---

[4] A recording device was placed in the vehicle.

[5] Agent Boyer testified that it is common for a drug dealer to utilize a second vehicle, because it effectively separates the drug dealer from the drugs, while simultaneously allowing him to keep a vigilant watch on his valuable drugs.

[6] The 7-11 was located less than half (1/2) a mile from the Kmart parking lot. This convenience store is located on the northeast corner of Front and Susquehanna Streets, Allentown, Lehigh County.

[7] Agent Carolina was positioned across the street from the 7-11 store, in the Domino's parking lot.

plates. One of the subject vehicles had two (2) occupants in it; the Defendant as the driver, and a female passenger, later identified as Reina Encarnacion. The Defendant parked his vehicle at the gasoline pumps, while the other Toyota Camry parked closer to the back of the 7-11 convenience store.

The courier, later identified as thirty-six (36) year old Co-Defendant Silvestre Evaristo, was in the second dark-colored Toyota Camry.[8] Co-Defendant Evaristo testified that he had received a telephone call from the Defendant early in the day on December 9, 2016. He was instructed by the Defendant to "wait for him," and that they would meet up. After Co-Defendant Evaristo finished his work for the day as a taxi driver in the Bronx, New York, the Defendant met up with him on the street.[9] The Defendant informed Co-Defendant Evaristo that he should wait for a male who was going to give him something. As instructed, Co-Defendant Evaristo waited in his vehicle, until ultimately a man arrived. Co-Defendant Evaristo exited his vehicle, and entered the unknown[10] male's vehicle for less than five (5) minutes. During this time, the male furnished Co-Defendant Evaristo with a package, which Co-Defendant Evaristo placed in the trunk of his vehicle. After this transaction, Co-Defendant Evaristo once again met up with the Defendant who was parked on the street. The Defendant approached Co-Defendant Evaristo's vehicle and inquired if he had the package. When Co-Defendant Evaristo answered in the affirmative, the Defendant provided him with an address in Bethlehem, Lehigh County, Pennsylvania. The plan was to meet up again at this Bethlehem address. After driving approximately two (2)

---

8     Co-Defendant Evaristo had known the Defendant for approximately two (2) years. They had met each other in the Bronx at a pool game.
9     The Defendant arrived in a black Toyota, with a female passenger.
10     The male did not identify himself by name to Co-Defendant Evaristo. He did express to Co-Defendant Evaristo that "he did not like doing things like this."

7

hours, Co-Defendant Evaristo arrived at the location.[11] The Defendant called Co-Defendant Evaristo and instructed him to park and wait for him. Co-Defendant Evaristo observed the Defendant enter the Bethlehem residence and remain there for about fifteen (15) to twenty (20) minutes. Then, the Defendant emerged from the house and Co-Defendant Evaristo gave him the package from the trunk of the vehicle. The Defendant reentered the residence with the package for another ten (10) minutes. When he finally emerged, the Defendant told Co-Defendant Evaristo to follow him to the Kmart parking lot in Allentown, Lehigh County, Pennsylvania. When Co-Defendant Evaristo arrived at this location and parked, he did not view the Defendant in the Kmart parking lot. After a few minutes, Co-Defendant Evaristo received a call from the Defendant advising him that they had to move from there because they were police cars in the parking lot. Consequently, Co-Defendant Evaristo moved his vehicle to a nearby gas station where he purchased gasoline for his vehicle. After other phone calls, ultimately the Defendant told Co-Defendant Evaristo that he should meet him at the 7-11 convenience store located at 11 East Susquehanna Street, Allentown, Lehigh County, Pennsylvania.

When Co-Defendant Evaristo arrived at the 7-11 store, he observed the Defendant's vehicle parked by the gas pumps, and he parked his vehicle closer to the back of the establishment. Co-Defendant Evaristo exited his vehicle and went to the Defendant's vehicle. He noted that there still was a front seat female passenger, but now there was also a male in the rear of the car. At that time, the Defendant

---

[11] The Defendant had arrived before him.

8

instructed Co-Defendant Evaristo to furnish the male (the Confidential Informant)[12] with the drugs that the Defendant had in his car. (C. Ex. 6). Complying, Co-Defendant Evaristo took the drugs from the Defendant and exited the Defendant's vehicle. (C. Ex. 6). Co-Defendant Evaristo entered the 7-11 convenience store. The Confidential Informant also entered the 7-11, and met with Co-Defendant Evaristo in the first aisle of the convenience store. There was a brief encounter in which Co-Defendant Evaristo took the drugs out of his hoodie and gave them to the Confidential Informant. Co-Defendant Evaristo subsequently returned to the area where the Defendant's vehicle was parked. The Defendant stated to Co-Defendant Evaristo, "Let's go. This is dangerous."

In the interim, Agent Carolina signaled to the other agents that the Confidential Informant had received the package[13] in the drug transaction. The Defendant, Co-Defendant Evaristo, and Renia Encarnacion were subsequently taken into custody on scene. They were transported to police headquarters, where the Defendant told Co-Defendant Evaristo "not to say anything. He was getting an attorney." Shortly thereafter, the Co-Defendants were separated. When Co-Defendant Evaristo and the Defendant saw each other again later that night, as well as a third

---

[12]     Agent Rodriguez had driven the Confidential Informant to the 7-11 and parked near the side of the convenience store. Approximately one (1) minute after their arrival, the Defendant arrived in his Toyota Camry and parked by the gas pumps. This was the same Toyota Camry that had previously been at the Kmart parking lot. The Confidential Informant entered the rear passenger side of the Toyota Camry with the two (2) occupants in it. Then, a second dark Toyota Camry arrived and parked near the back of the store. Agent Carolina notified Agent Rodriguez that Co-Defendant Evaristo had exited his vehicle and had walked towards the vehicle parked by the gas pumps.

[13]     The Confidential Informant had turned over to Agent Rodriguez a tubular shaped package in a black plastic bag containing suspected heroin. (C. Ex. 6); (C. Ex. 18). The agents noted that this was unusual packaging (usually in bundles) and that it reflected that it was most likely transported from a larger source. The street value of 233 grams of heroin is approximately Seventy Thousand ($70,000.00) Dollars. (C. Ex. 10).

9

time, the Defendant reiterated that Co-Defendant Evaristo should not say anything and that he was securing an attorney. He also expressed to Co-Defendant Evaristo that "Pito" (the Confidential Informant) had turned them in. During the course of the arrest, two (2) cellular phones were seized from the Defendant, one (1) cellular phone from Renia Encarnacion, and two (2) cellular phones were seized from Co-Defendant Evaristo's vehicle as the result of a consent search.[14] (C. Ex. 13); (C. Ex. 14); (C. Ex. 15). In addition, Co-Defendant Evaristo was provided with *Miranda* warnings prior to an interview at the regional office. He waived his *Miranda* rights and provided the authorities with a statement implicating the Defendant.

Moreover, at trial, Co-Defendant Evaristo testified[15] that he had made a total of five (5) deliveries of drugs to "Pito" (the Confidential Informant) at the behest of the Defendant. The first transaction occurred in 2016, when the Defendant told him to bring cocaine to a man in Allentown, Pennsylvania, Lehigh County. Co-Defendant Evaristo accepted the task, as he needed the money. The Defendant and Co-Defendant Evaristo met in a parking lot in the Bronx, and the Defendant provided Co-Defendant Evaristo with two (2) square-shaped packages of cocaine that he placed in

---

[14] Both Toyota sedans were taken into custody and searched. No drugs, drug paraphernalia or currency was located in the vehicles. In addition, the Defendant and Co-Defendant Evaristo executed a consent form to search their respective two (2) cellular phones. (C. Ex. 11); (C. Ex. 16). The Defendant's and Co-Defendant Evaristo's cellular phones were sent to the lab for analysis.

[15] Co-Defendant Evaristo testified that in exchange for his testimony in court, he previously had entered a guilty plea to Conspiracy to Possession With Intent to Deliver and Possession With Intent to Deliver. The terms of the deal were that the amount of heroin was reduced from 207 grams to between 50 grams and 100 grams which resulted in a lower gravity score. In addition, the agreement on Count 1 was that the Defendant's minimum sentence would not exceed the standard range of the Sentencing Guidelines; to wit, 22 months to 36 months. In other words, it was agreed that his minimum sentence would not exceed three (3) years. Also, in Count 2, the Defendant was to receive a probationary sentence that would run consecutively to any jail sentence. As part of the deal, Co-Defendant Evaristo agreed to testify truthfully at the Defendant's trial.

the trunk of his vehicle. The Defendant furnished Co-Defendant Evaristo with an address in Allentown, and they separately drove to this designated location. When "Pito" arrived, Co-Defendant Evaristo gave him the drugs.[16] After the transaction, Co-Defendant Evaristo returned to New York. On a later date, the Defendant paid Co-Defendant Evaristo $400.00 for making this delivery.

The second delivery occurred approximately a week and a half later. At that time, after exchanging some brief communication, the Defendant and Co-Defendant Evaristo met in the same parking lot in the Bronx. The Defendant gave him drugs which were packaged in the same manner as before, and instructed Co-Defendant Evaristo to deliver them to "Pito" at the same address in Allentown, Pennsylvania, Lehigh County. Again, the Defendant and Co-Defendant Evaristo drove separately to the location. When "Pito" arrived, Co-Defendant Evaristo gave him the drugs. This time, "Pito" gave Co-Defendant Evaristo $400.00 and instructed him to give it to the Defendant.

Approximately three (3) weeks later, the third transaction occurred. As with the previous two (2) incidents, after exchanging some brief communication, the Defendant and Co-Defendant Evaristo met in the same parking lot in the Bronx. This time, however, Co-Defendant Evaristo entered the Defendant's vehicle and together they drove to Manhattan, New York. Co-Defendant Evaristo met with an unknown male who he did not recognize. This male and Co-Defendant Evaristo left together in the male's vehicle, and they drove to the Bronx. The male parked his vehicle and told Co-Defendant Evaristo to wait for him. When the unknown actor returned, he

---

[16] At the time of the delivery, the Defendant was parked in his vehicle about ten (10') feet away.

11

possessed a small bag containing three (3) rocks of cocaine. He handed the drugs to Co-Defendant Evaristo, who placed the drugs in the back seat of the vehicle. Co-Defendant Evaristo called the Defendant to advise him that they had the package. The Defendant instructed him to take it to "Pito" at an address on Penn Street in the Lehigh Valley. Co-Defendant Evaristo complied with this request and met with "Pito" to give him the drugs. Afterwards, Co-Defendant Evaristo returned to the Bronx. The Defendant was not physically present for this drug transaction. The following day, the Defendant furnished Co-Defendant Evaristo with $300.00 for his involvement in the drug deal.

The fourth drug trip to Lehigh County, Pennsylvania entailed Co-Defendant Evaristo receiving a telephone call from the Defendant in which he instructed Co-Defendant Evaristo to drive to "Pito's" residence to pick something up. When Co-Defendant Evaristo arrived, "Pito" told him to wait because he was counting money. "Pito" gave Co-Defendant Evaristo Nine Thousand ($9,000.00) Dollars which was separated in thousand dollar bundles. Co-Defendant Evaristo was told to deliver the money to the Defendant. Co-Defendant Evaristo complied.

Agent Kirk Schwartz, a narcotics agent with the Pennsylvania Office of the Attorney General, Bureau of Narcotics and Drug Control, and an expert in drug trafficking, opined that the Defendant possessed the heroin with the intent to deliver it. Agent Schwartz based his opinion, *inter alia*, on his training and experience, as well as the quantity of drugs seized, the statement of Co-Defendant Evaristo, the use of separate vehicles, and the circumstances of bringing product to Pennsylvania to furnish to another at the direction of a third party.

Viewing all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth, it is clear that the evidence was sufficient to enable a finder of fact to conclude that all the elements of the offenses were established beyond a reasonable doubt. Indeed, at the conclusion of the jury trial, the jury had no doubt that the Defendant constructively possessed the heroin by exercising conscious dominion and control over it, and that he had the intent to exercise such control; and that the intent included delivery. In addition, the evidence was more than ample for the jury reasonably to conclude that the Defendant entered into a conspiracy with Co-Defendant Evaristo to possess the heroin with the intent to deliver it.

## B. Challenging the Weight of the Evidence

The Defendant also alleges that the verdict was against the weight of the evidence. This Court notes that a motion for a new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends that it is against the weight of the evidence. Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000); Commonwealth v. Bennett, 827 A.2d 469, 481 (Pa. Super. 2003). Furthermore, a challenge that the verdict is against the weight of the evidence requires this Court to conclude in its discretion that "the verdict is so contrary to the evidence as to shock one's sense of justice." Lyons, 833 A.2d at 258. Indeed, for a new trial to lie on a challenge that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court."

13

Commonwealth v. Shaffer, 722 A.2d 195, 200 (Pa. Super. 1998). See also Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003).

From the evidence recounted above, it is reasonable to have concluded that the Defendant constructively possessed the heroin by exercising conscious dominion and control over it, and that he had the intent to exercise such control; and that the intent included delivery; and that the Defendant entered into a conspiracy with Co-Defendant Evaristo to possess the heroin with the intent to deliver it. Accordingly, the Defendant's challenge to the weight of the evidence must fail.

## C. Motion to Reconsider and Modify Sentence

In his Post Sentence Motion, the Defendant asserts that this Court erred in sentencing the Defendant to an unduly harsh and manifestly excessive sentence. We cannot agree.

The Defendant is challenging the discretionary aspects of sentencing. Commonwealth v. Bishop, 831 A.2d 656, 660 (Pa. Super. 2003). Initially this Court notes that:

> Sentencing is within the sound discretion of the sentencing judge, and that decision will not be disturbed absent an abuse of discretion. Commonwealth v. Jones, 418 Pa. Super. 93, 613 A.2d 587, 591 (1992)(*en banc*). "To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive." Commonwealth v. Gaddis, 432 Pa. Super. 523, 639 A.2d 462, 469 (1994). Nevertheless, sentencing guidelines are merely advisory, and the court may, in its discretion, sentence outside the guidelines. When a trial court deviates from the guidelines, it must state its reasons for deviation on the record at the time of sentencing or in a contemporaneous written statement. Commonwealth v. Lawson, 437 Pa. Super. 521, 650 A.2d 876, 881 (1994). The court must also consider the guidelines as a starting point and deviate so as to impose a sentence consistent

14

with both the public's safety needs and the defendant's rehabilitative needs. Id.

Commonwealth v. Shaffer, 722 A.2d 195, 198-199 (Pa. Super. 1998). If "the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable," its responsibilities have been fulfilled and the appellate courts will not disturb the sentence. Commonwealth v. Gibson, 716 A.2d 1275, 1277 (Pa. Super. 1998).

In the instant case, the Defendant's sentences imposed were within the standard range of the sentencing guidelines, and therefore well within the statutory limits. Therefore, the Defendant's sentence must be evaluated to determine if it was "manifestly excessive." To do so, the following considerations must be examined:

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. Commonwealth v. Ellis, 700 A.2d 948, 958 (Pa. Super. 1997). Where an excessiveness claim is based on a court's sentencing outside the guideline ranges, we look, at a minimum, for an indication on the record that the sentencing court understood the suggested sentencing range. 42 Pa. C.S.A. § 9721(b). When the court so indicates, it may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range.

Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003) (citations omitted).

Moreover, "[i]t is well-settled that appeals of discretionary aspects of a sentence are not reviewable as a matter of right." Commonwealth v. Ladamus, 896

15

A.2d 592, 595 (Pa. Super. 2006); see also Commonwealth v. Shugars, 895 A.2d 1270, 1274 (Pa. Super. 2006); Commonwealth v. McNabb, 819 A.2d 54, 55 (Pa. Super. 2003). The defendant must demonstrate that a substantial question exists concerning the sentence. Commonwealth v. Lee, 876 A.2d 408, 411 (Pa. Super. 2005). Furthermore, a substantial question requires something more than an allegation that the sentences imposed are excessive or harsh. Ladamus, 896 A.2d at 595. Consequently, Defendant's assertion that this Court abused its discretion by imposing an excessive and harsh sentence fails to present a substantial question to justify a review of her claim.

Additionally, even if the merit of the Defendant's sentencing claim were addressed, Defendant's argument must fail. The Defendant's sentence must initially be evaluated to determine if there was an abuse of discretion. Commonwealth v. Walls, 926 A.2d 957 (Pa. 2007). The standard of review has been explained in the following manner:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. 2006), citing Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa. Super. 1999)(en banc).

This Court considered all the required statutory factors in sentencing the Defendant. Indeed, in imposing the Defendant's sentence, this Court considered the

"protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs, and the sentencing guidelines." 42 Pa. C.S.A. § 9721(b); Commonwealth v. Feucht, 955 A.2d 377, 383 (Pa. Super. 2008).

Prior to sentencing this Court carefully reviewed the Pre-Sentence Investigation Report prepared on January 17, 2018. Therefore, this Court did not fail to consider mitigating factors. Commonwealth v. Devers, 519 Pa. 88, 546 A.2d 12 (1988) (holding that where a pre-sentence report exists, there is a presumption that the sentencing judge was aware of and adequately considered information relevant to the defendant's character, as well as any mitigating factors). Indeed, this Court was cognizant of Defendant's lack of a significant prior record, his employment history, as well as the facts and circumstances surrounding the within charges. Using its discretion, this Court imposed a sentence that was within the standard range of the guidelines and within the law. Accordingly, the Defendant's argument is baseless and the Defendant's Post-Sentence Motion to Reconsider and Modify Sentence is denied.

Based on the foregoing, the Defendant's Post Sentence Motion is denied.

17