J-A05021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROXIE DICK | : | |
| | : | |
| Appellant | : | No. 553 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 16, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000704-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROXIE DICK | : | |
| | : | |
| Appellant | : | No. 554 WDA 2024 |

Appeal from the Judgment of Sentence Entered November 16, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000705-2020

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED: May 29, 2025**

Appellant, Roxie Dick, appeals *nunc pro tunc* from the judgment of sentence entered in the Blair County Court of Common Pleas, following her jury trial convictions for three counts of possession with intent to deliver a

---

[*] Retired Senior Judge assigned to the Superior Court.

controlled substance ("PWID"), and one count of conspiracy.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Sergeant Christopher Moser of the Altoona Police Department was working as part of the Blair County drug task force, investigating potential crimes through the development and use of confidential informants, including Michael Beck. Mr. Beck knew Caleb Lanzendorfer[2] after meeting him in Blair County Prison, and had met Appellant, Mr. Lanzendorfer's girlfriend, through him.

On September 23, 2019, Sergeant Moser utilized Mr. Beck to arrange a controlled buy of methamphetamine and heroin from Appellant and Mr. Lanzendorfer.  Mr. Beck spoke to Mr. Lanzendorfer to buy half an ounce of methamphetamine and half a gram of heroin before speaking to Appellant about "getting front."[3]  The three agreed upon a location to meet, namely, a Wal-Mart in East Freedom.  Sergeant Moser and another officer conducted surveillance and took photographs as Sergeant Derek Swope drove Mr. Beck into the parking lot.  Once there, they received a call from Mr. Lanzendorfer

_____

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 903, respectively.

[2] Mr. Lanzendorfer's name appears, with various spellings, in both the certified record and the trial court's opinion.  The Unified Judicial System dockets confirm that the correct spelling is Lanzendorfer.

[3] By "getting front," Mr. Beck meant that he requested to buy the drugs on credit, with the intent to pay Appellant and Mr. Lanzendorfer back at a later date.  (**See** N.T. Trial, 8/19/21, at 132).  "I asked first about getting front because that's what I used to do with them.  And [Appellant] told me they couldn't do that..."  (**See id.** at 119-20).  Mr. Beck told Appellant that he would attempt to "round some paper up," to which Appellant responded "Okay." (**See id.** at 130).

changing the location of the meeting. Sergeant Swope then drove Mr. Beck to the Creek Side Inn. Appellant and Mr. Lanzendorfer arrived in a white Volkswagen Jetta, which was registered to Appellant. Mr. Beck got into the car with them, and the three drove away from the parking lot. In the car, Mr. Lanzendorfer gave Mr. Beck the methamphetamine. Appellant took out a scale, weighed a half gram of heroin in a metal tube, and gave Mr. Beck the heroin.

Mr. Beck gave Mr. Lanzendorfer $500.00 and they drove to an ice cream stand. Officers briefly lost view of the Jetta, but during roaming surveillance, Sergeant Moser found it again and made a positive identification of the vehicle's occupants, and Sergeants Moser and Swope followed the Jetta to the ice cream stand. Mr. Beck and Mr. Lanzendorfer bought milkshakes, while Appellant stayed in the car. Upon his return, Mr. Beck turned over to Sergeant Swope the purchased methamphetamine and heroin, and officers took him back to the narcotics office to conduct a strip search, field tests, and to package the evidence.

On September 25, 2019, Mr. Beck arranged another controlled purchase from Appellant and Mr. Lanzendorfer, a process which Sergeant Moser observed. Mr. Beck attempted to contact both Appellant and Mr. Lanzendorfer. Later, Appellant attempted to call Mr. Beck, and when she could not reach him, sent him a thumb's up emoji. Appellant asked Mr. Beck what was up, to which he asked if she was ready, informing her he only had $800.00 to give her for an ounce of methamphetamine. Mr. Beck then attempted to

call Mr. Lanzendorfer to further set up the meeting.

Subsequently, Sergeant Matthew Plummer drove Mr. Beck to a FeFi's parking lot to make the buy, with Sergeant Moser and another officer assisting in surveillance. They observed and photographed Appellant and Mr. Lanzendorfer arriving in the white Jetta. Mr. Beck got into the car, where Appellant gave Mr. Lanzendorfer a scale from her purse to weigh the methamphetamine before she got out of the car and went into the store. Mr. Lanzendorfer gave Mr. Beck an ounce of methamphetamine and Mr. Beck gave him $800.00. At Mr. Lanzendorfer's request, Mr. Beck smoked a hit of methamphetamine. At that time, Appellant came out of the store and returned to the car, and Mr. Beck got out of the car and exchanged a hug with her. Mr. Beck then returned to Sergeant Plummer, and he was taken back to the station to conduct a strip search, field testing, and evidence packaging.

Thereafter, the Commonwealth charged Appellant at two dockets with PWID, conspiracy, and criminal use of a communication facility. The case proceeded to a jury trial, and on August 20, 2021, the jury convicted Appellant of the aforementioned charges and acquitted her of criminal use of a communication facility. Appellant remained on bail following the guilty verdicts, subject to supervision, which included drug testing. However, after testing positive for methamphetamine, she was jailed awaiting sentencing.

On November 16, 2021, the court conducted a sentencing hearing, at which it noted that it had considered a pre-sentence investigation ("PSI") report, the sentencing memoranda of counsel, and the testimony of Appellant

and her family. The court ultimately imposed an aggregate sentence of 6.5 to 40 years of incarceration.

After failing to file a timely direct appeal, on February 14, 2024, the court reinstated Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*. On February 23, 2024, Appellant timely filed a post-sentence motion *nunc pro tunc*. On April 11, 2024, the court held a hearing on the motion. The court denied the motion on May 7, 2024. Appellant timely filed notices of appeal *nunc pro tunc* at each underlying docket on May 8, 2024.[4] On May 10, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On May 29, 2024, Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

> I. Whether the evidence was insufficient to sustain the guilty verdict of Criminal Conspiracy to Commit [PWID]?
>
> II. Whether the evidence was insufficient to sustain the guilty verdict of [PWID]?
>
> III. Whether the sentence was excessive and whether the trial court violated the sentencing code in fashioning the sentence of 6½ to 40 years?

(Appellant's Brief at 7).

Appellant's first two issues challenge the sufficiency of the evidence to sustain her convictions. When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

_____

[4] This Court subsequently consolidated the appeals *sua sponte*.

- 5 -

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

In her challenge to the sufficiency of the evidence to sustain her convictions for PWID, Appellant admits that the testimony of Michael Beck established that she gave him heroin. However, she contends that the Commonwealth did not present sufficient evidence to sustain her conviction for two counts of PWID concerning the delivery of methamphetamine. Appellant argues that Mr. Lanzendorfer alone was responsible for supplying

the methamphetamine. According to Appellant, for the first controlled buy, she was only present, and for the second, she was not even in the vehicle and had exited it prior to the drug transaction taking place. Appellant asserts that she never possessed the methamphetamine and that it was always in the sole possession of Mr. Lanzendorfer. Appellant concludes the evidence was insufficient to sustain her PWID convictions for delivery of the methamphetamine, and this Court must grant relief. We disagree.

The Controlled Substance, Drug, Device and Cosmetic Act provides the following:

### § 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are prohibited:

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). Thus, to sustain a conviction for PWID, the Commonwealth must prove: (1) that the defendant possessed or constructively possessed a controlled substance (2) with the intent to manufacture, distribute, or deliver it. *Commonwealth v. Brown*, 48 A.3d 426, 42 (Pa.Super. 2012). Further, "possession with intent to deliver can be inferred from the quantity of drugs" possessed by the defendant.

***Commonwealth v. Little***, 879 A.2d 293, 298 (Pa.Super. 2005), *appeal denied*, 586 Pa. 724, 890 A.2d 1057 (2005).

Further:

> [A] defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if [s]he was an accomplice of a principal actor. ***See*** 18 Pa.C.S.[A.] § 306; ***see also Commonwealth v. Bradley***, 481 Pa. 223, 392 A.2d 688, 690 (1978) (the actor and his accomplice share equal responsibility for commission of a criminal act). A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S.[A] § 306; ***Commonwealth v. Spotz***, 552 Pa. 499, 716 A.2d 580, 585 (1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." ***See Commonwealth v. Woodward***, [614 A.2d 239, 242 (Pa.Super.] 1992). First, there must be evidence that the defendant intended to aid or promote the underlying offense. ***See id.*** Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. ***See id.*** While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that [s]he knew about the crime or was present at the crime scene. ***See Commonwealth v. Wagaman***, [627 A.2d 735, 740 (Pa.Super.] 1993). There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. ***See id.*** With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime. ***See Commonwealth v. Cox***, 546 Pa. 515, 686 A.2d 1279, 1286 (1997).

***Commonwealth v. Murphy***, 577 Pa. 275, 285-86, 844 A.2d 1228, 1234

(2004).[5]

Instantly, the trial court summarized the evidence as follows.

> [T]he jury heard testimony from [Mr. Beck] that on September 23, 2019, [Appellant] handed him heroin after weighing it on a scale. The testimony of [Mr. Beck] was supported by the testimony of police officers who engaged in the procedures to ensure the integrity of [the controlled substances]. Additionally, the jury saw the substances received by [Mr. Beck] and heard a forensic scientist confirm that the items constituted controlled substances. Finally, the jury saw [Appellant] identified as the person who handed the suspected heroin to [Mr. Beck].
>
> The jury also heard that on September 25, 2019, [Appellant] was the person who provided a scale to Caleb [Lanzendorfer] for the methamphetamine to be weighed immediately prior to it being provided by [Mr. Lanzendorfer] to [Mr. Beck]. The jury again heard the testimony from the officers involved .... [including] their own surveillance of [Appellant.] [Appellant's] actions as observed by the officers matched the information provided by [Mr. Beck]. The forensic scientist also provided confirmation that [the evidence] was in fact controlled substances.
>
> The jury heard the testimony when [Mr. Lanzendorfer] delivered the methamphetamine to [Mr. Beck], that [Mr. Beck] paid [Mr. Lanzendorfer] the full amount for both the methamphetamine he received from [Mr. Lanzendorfer] directly, as well as the heroin he received from [Appellant.]
>
> .... As to the sufficiency for the delivery of drugs on September 23 and 25, the evidence and the reasonable inferences from the evidence supported the jury's conclusion that [Appellant] acted, as an accomplice, to help [Mr. Lanzendorfer] commit the deliveries of methamphetamine and heroin since she provided the heroin on the first buy directly to Mr. Beck and also acquiesced to

---

[5] The jury was charged on accomplice liability as well as conspiracy. (*See* N.T. Trial, 8/20/21, at 89-95).

Mr. Beck paying [Mr. Lanzendorfer] for both the methamphetamine and heroin and since she provided the scales for [Mr. Lanzendorfer's] use to weigh the methamphetamine for the second buy before she left the car.

(Trial Court Opinion, 6/27/24, at 11-12).

The record supports the trial court's conclusions. Specifically, the evidence established that Mr. Beck contacted both Mr. Lanzendorfer and Appellant to arrange the controlled buys, and that he spoke to Appellant directly about payment for the drugs and Appellant told him she would not "front" him the drugs. (*See* N.T. Trial, 8/19/21, at 89-90, 118-22, 125-26, 129-130). During the September 23rd purchase, Appellant was present in the passenger seat of the car driven by Mr. Lanzendorfer, but registered to Appellant, and weighed out the heroin for Mr. Beck. (*See id.* at 93, 233). She was also present when Mr. Lanzendorfer handed Mr. Beck the methamphetamine. (*Id.*). During the September 25th purchase, Mr. Beck reached out to Appellant in an attempt to set up the buy. (*Id.* at 97-98, 135, 139). During this meeting, Appellant handed Mr. Lanzendorfer a scale from her purse to weigh the methamphetamine. (*Id.* at 136).

Despite Appellant's arguments that she was solely accompanying her boyfriend during the controlled buys, the evidence was sufficient for the jury to reasonably infer that Appellant was an active participant in scheduling, weighing, and otherwise aiding Mr. Lanzendorfer in the sale of both heroin and methamphetamine. *See Murphy, supra*. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain

her convictions for PWID of methamphetamine. ***See id.***; ***Sebolka, supra***.

With regard to conspiracy to commit PWID, Appellant argues that the evidence was insufficient to sustain her conviction because there was no evidence of an agreement between her and Mr. Lanzendorfer. Appellant claims that Mr. Lanzendorfer did not testify at trial, and that the testimony established only that she was present at the scene of the crime, which was not out of the ordinary because Mr. Lanzendorfer was Appellant's boyfriend. Appellant concludes the evidence was insufficient to sustain her conspiracy conviction, and this Court must grant relief. We disagree.

To establish conspiracy, the Commonwealth must prove: "that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005) (internal quotation marks and citation omitted).

Instantly, the trial court reasoned:

> [T]he Commonwealth presented evidence showing that [Mr. Beck's] communication [was] with both [Mr. Lanzendorfer and Appellant]. … [T]he evidence relative to the communication prior to the controlled purchase helped establish the agreement between [Mr. Lanzendorfer] and [Appellant] for the sale of controlled substances to [Mr. Beck] on September 23 and September 25, 2019.
>
> The testimony from [Mr. Beck] as to his payment of the [$500.00] directly to [Mr. Lanzendorfer] for the methamphetamine and also the heroin he received from [Appellant] further supports the agreement and is evidence

that [Appellant] and [Mr. Lanzendorfer] were working together. With regard to September [25], 2019 and that controlled purchase, the testimony established that [Appellant] and [Mr. Lanzendorfer] arrived in the white Volkswag[e]n Jetta again, [and the] car was registered to [Appellant]. Upon arriving, [Mr. Beck] entered the vehicle and testified that [Appellant] stayed for a few moments before taking a scale out of her purse and handing it to [Mr. Lanzendorfer] so that he could weigh out the ounce of methamphetamine that was prearranged to be the amount and substance transferred to [Mr. Beck]. [Appellant's] act of handing the scale to [Mr. Lanzendorfer] is circumstantial evidence of the agreement between [Appellant and Mr. Lanzendorfer] to engage in the delivery of a controlled substance to [Mr. Beck]. For these reasons, this [c]ourt concludes that the Commonwealth presented sufficient evidence to sustain [Appellant's conviction for] conspiracy with the object crime being [PWID]. The above referenced conduct is sufficient circumstantial evidence of a conspiracy between [Appellant and Mr. Lanzendorfer] to jointly engage in delivery of drugs on both September 23 and September 25, 2019. [Appellant] provided drugs directly to [Mr. Beck] on September 23 and [Mr. Beck] paid the money for the heroin and the methamphetamine to [Mr. Lanzendorfer]. Additionally, on September 25, 2019, [Appellant] provided the scale that was necessary for the ounce of meth to be weighed prior to its deliver to [Mr. Beck]. The reasonable inferences of these acts [support] the conclusion that [Appellant] was working with [Mr. Lanzendorfer] in the delivery of controlled substances to [Mr. Beck].

(Trial Court Opinion at 14-16).

The record supports the trial court's conclusions. Contrary to Appellant's arguments, the evidence established that she and Mr. Lanzendorfer jointly agreed to arrange the sale of drugs to Mr. Beck. Appellant's handing of the drugs to Mr. Beck on September 23, 2019, and the scale to Mr. Lanzendorfer on September 25, 2019 to weigh the drugs, constituted substantial steps towards furthering that agreement. **See Jones, supra**. Viewed in the light

most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conspiracy conviction. **See Sebolka, supra**.

In her final issue, Appellant claims that her sentence was excessive. Appellant complains that the 40-year maximum term of imprisonment does not properly balance the factors to be weighed when fashioning a sentence according to the Sentencing Code. As presented, Appellant's claim challenges the discretionary aspects of sentencing. **See Commonwealth v. Lutes**, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); **Commonwealth v. Cruz-Centeno**, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining claim that court did not consider mitigating factors challenges discretionary aspects of sentencing).

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in her brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 912-13 (Pa.Super.

2000). A claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the Sentencing Code, even if the sentence is within the statutory limits. **Mouzon, supra** at 430, 812 A.2d at 624. Bald allegations of excessiveness, however, do not raise a substantial question to warrant appellate review. **Id.** at 435, 812 A.2d at 627.

Further, "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Commonwealth v. Disalvo**, 70 A.3d 900, 903 (Pa.Super. 2013) (internal citation omitted). **See also Commonwealth v. Griffin**, 804 A.2d 1, 9 (Pa.Super. 2002) (noting that allegation that sentencing court did not consider evidence of good behavior in prison, alleged brain damage, and limited mental capacity does not raise a substantial question). Nevertheless, an excessive sentence claim **in conjunction** with a claim that the sentencing court failed to consider certain mitigating factors raises a substantial question. **Commonwealth v. Caldwell**, 117 A.3d 763, 769-70 (Pa.Super. 2015).

Instantly, Appellant timely filed a notice of appeal *nunc pro tunc*. In her post-sentence motion *nunc pro tunc*, she argued that her sentence "may have seemed appropriate" but that it should be modified due to her good behavior in prison and the many educational classes she has taken. (**See** Post-Verdict and Post-Sentence Motion, 2/23/24, at 1-2). Appellant raises this same claim in her Rule 2119(f) statement, along with an allegation that her sentence is excessive. As Appellant did not preserve her excessiveness claim in her post-

- 15 -

sentence motion *nunc pro tunc*, that particular claim is waived. **See Evans,**

**supra**. Thus, the sole claim that Appellant has preserved is that the court

failed to properly consider her post-sentence conduct in confinement as a

mitigating factor. This claim does not raise a substantial question. **See**

**Disalvo, supra**; **Griffin, supra**. Accordingly, we decline to reach the merits

of Appellant's discretionary sentencing claim.[6] Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

5/29/2025

---

[6] Moreover, even if we reached the merits of Appellant's sentencing claim, it would not merit relief for the reasons stated in the trial court's opinion. (**See** Trial Court Opinion at 19-20) (stating that court considered Appellant's history, sentencing guidelines, Appellant's family support and obligations, her addiction, and Appellant's mental health needs; court had originally contemplated imposing all sentences consecutively but upon hearing from Appellant's mother and sister, court revised sentence; court noted that Appellant's bail was revoked prior to sentencing due in part to continued drug use; court imposed standard range sentences; court imposed sentence that provides necessary opportunities for punishment, society's protection, and also affords Appellant sufficient time to be rehabilitated; court considered PSI report, all mitigation evidence, Appellant's prior record score, and need to protect society; after all relevant considerations, court's aggregate sentence of 6½ to 40 years' imprisonment was not abuse of court's sentencing discretion).