614 A.2d 239

**COMMONWEALTH of Pennsylvania**

v.

**Anthony WOODWARD, Appellant.**

Superior Court of Pennsylvania.

Argued May 29, 1992.

Filed July 28, 1992.

Robert E. Welsh, Jr., Philadelphia, for appellant.

Peter Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We reverse and remand for a new trial.

On March 23, 1984, appellant Anthony Woodward was charged with first degree murder and criminal conspiracy. Anthony Woodward ("Anthony") was tried with his cousin, Jerry Woodward ("Jerry"). After a bench trial, the Honorable Juanita Kidd Stout presiding, Anthony was found guilty of first degree murder and conspiracy; Jerry was found guilty of first degree murder, aggravated assault, and conspiracy. Post-verdict motions were filed and subsequently denied. Anthony was sentenced to life imprisonment for murder and the sentence was suspended on the conspiracy charge. Anthony appealed to this court and the judgment of sentence was affirmed in a memorandum opinion on August 23, 1985.

Anthony filed a motion for reargument with this court, which was dismissed because it was untimely filed. Anthony then filed a *nunc pro tunc* petition for allocatur, which was denied. On October 7, 1987, Anthony filed a petition for post conviction relief under the Post Conviction Hearing Act (PCHA), 42 Pa.C.S. § 9541 *et seq.*[1] The Commonwealth filed

1. The Post Conviction Hearing Act has been modified in part, repealed in part, and renamed the Post Conviction Relief Act (PCRA) through

a motion to dismiss the petition on March 30, 1988. On August 17, 1988, the Honorable Joseph D. O'Keefe granted in part the Commonwealth's motion to dismiss. The motions court dismissed the due process and sufficiency of the evidence claims; however, the remaining claims were assigned to the Honorable James D. McCrudden, who held an evidentiary hearing on the PCHA petition. Judge McCrudden stated that there was insufficient evidence to support the conviction and found that trial counsel was ineffective. He further stated that:

> This Court [Court of Common Pleas of Philadelphia County] believes that an injustice has occurred and that while most of the blame was caused by the attorney representing the defendant, the judicial system cannot entirely escape blame for allowing the error to go uncorrected.

Thereafter, Judge McCrudden authorized the filing of post-trial motions *nunc pro tunc*. Both parties appealed from the order. Woodward appealed to the extent he was denied relief and the Commonwealth appealed from the order to the extent Anthony was permitted to file post-trial motions *nunc pro tunc*. This court affirmed the PCHA court's granting of post-trial motions and remanded the case to the trial court. Anthony filed his post-trial motions *nunc pro tunc*. Following argument, the trial court, the Honorable Juanita Kidd Stout again presiding, denied the post-trial motions and reimposed the sentence of life imprisonment on the first degree murder charge and suspended sentence on the conspiracy charge. This timely appeal followed.

The record indicates that Jerry and the victim, James Himmons ("Himmons") had a physical and verbal confrontation at a party on March 23, 1984, where Jerry while displaying a gun, threatened to kill Himmons. There is no evidence that Anthony attended that party. After the party ended, the police stopped Himmons for a routine traffic violation. Himmons was driving a friend's car and was accompanied by several friends. Himmons had a gash on his head, and he

amendments effective April 13, 1988. Anthony's petition was filed on October 26, 1987 and is, therefore, governed under the PCHA.

explained to the police that the wound was the result of a fight with Jerry. He also stated that Jerry had stolen his designer eyeglasses during the earlier altercation. While the owner of the car which Himmons had been driving stayed with the police, Himmons and his friends then walked to Ted's bar in search of Jerry.

Inside the bar, Anthony was sitting with friends when Jerry sat down in a booth with them. Thereafter, Himmons and his friends entered the bar and approached Jerry. Himmons demanded his glasses. Jerry denied having the glasses and reached into his pocket. In response, Himmons punched him. Two Commonwealth witnesses who were friends of Himmons, Emanuel Rose and Ernest Hilbert, testified that during this altercation Jerry stabbed Himmons in the abdomen. Anthony attempted to assist Jerry, but was restrained and punched in the face by one of Himmons's friends. The blow to his face knocked him into a booth. Hilbert testified that when Anthony recovered from the blow, he began striking Himmons on the back. He also stated that Himmons was attempting to flee the bar, while Anthony followed him. The police, who were outside the bar, separated Anthony and Himmons. One of the police officers noticed that Himmons was bleeding. Himmons was taken to Miseracordia Hospital where he, subsequently, died of stab wounds during surgery. Anthony was arrested outside the bar and Jerry, who had exited the bar through a back door, was arrested later. The police discovered a bloody knife in the bar.

Anthony presents several issues for our consideration:

(1) Was there sufficient evidence to support Anthony Woodward's convictions for first degree murder and conspiracy as an accessory and conspirator in the death of the victim during a bar fight between the victim and appellant's cousin during which the cousin stabbed the victim?

(2) Was Anthony Woodward denied the effective assistance of trial counsel based upon trial counsel's failures to investigate, interview and present exculpatory testimony and other evidence which demonstrated that he did not chase and punch the victim after he had been stabbed?

(3) Did the Commonwealth's failure to disclose exculpatory information showing that the appellant did not chase and punch the victim violate his rights under the due process clause?

(4) Does the testimony of Antrion Freeman and Reginald Marsh constitute newly discovered evidence mandating a new trial?

(5) Should a new trial be ordered based upon cumulative error and in the interests of justice?

## I. INSUFFICIENCY OF THE EVIDENCE

Anthony first contends that there is insufficient evidence to support his conviction of first degree murder and conspiracy. More specifically, Anthony argues that there is no evidence of shared criminal intent, intent to kill, or premeditation on his part, nor was there any basis for finding that he aided and abetted or conspired in the murder of Himmons.

In reviewing the sufficiency of the evidence:

... we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of the witness and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

*Commonwealth v. Taylor,* 324 Pa.Super. 420, 422, 471 A.2d 1228, 1229 (1984). It is with this standard in mind that we review Anthony's claim.

Pursuant to the Crimes Code, a person is legally accountable for the conduct of another if "he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. § 306(b). One is an accomplice of another in the commission of an offense if "with the intent of promoting or facilitating the commission of the offense, he ... aids or agrees or attempts to aid such other person in planning or committing it ..." 18 Pa.C.S.A. § 306(c).

 Thus, in order to be convicted of accomplice liability, a two step analysis is required. First, it must be determined whether the accused possessed the requisite criminal intent. *Commonwealth v. Potts*, 388 Pa.Super. 593, 599–600, 566 A.2d 287, 291 (1989), *allocatur granted*, 525 Pa. 656, 582 A.2d 322 (1990). If the accomplice acts with the intent of promoting or facilitating the commission of the crime, he is equally criminally liable for the acts of the principal. *Id.* at 600, 566 A.2d at 291. Second, it must be determined whether the defendant aided or agreed or attempted to aid in the commission of the offense. "It is well settled that this requirement is satisfied by the least degree of concert or collusion between the accomplice and the principal." *Commonwealth v. Coccioletti*, 493 Pa. 103, 109, 425 A.2d 387, 390 (1981); *Commonwealth v. Strantz*, 328 Pa. 33, 40, 195 A. 75, 79 (1937).

 Anthony argues that there was no evidence to suggest that he knew that his cousin had mortally wounded Himmons and, thus, there are no facts from which an intent to kill can be found. In order to determine whether there was sufficient evidence to establish beyond a reasonable doubt that Anthony possessed the intent to promote or facilitate Himmons's death, we must view the facts in a light most favorable to the Commonwealth. *Potts*, 388 Pa.Super. at 601, 566 A.2d at 291. Given the record here, there was sufficient evidence for the trial court to conclude that Anthony acted with the intent to facilitate Himmons's death.

Anthony testified at trial that he was not aware of the stabbing until after he had been arrested. However, in a statement made immediately after the murder, Anthony admitted that he saw Himmons bleeding during the fight. He also described the manner of the stabbing and the sequence of events immediately preceding the stabbing. Additionally, Himmons's wounds were clearly visible, as he was bleeding profusely, and his intestines were protruding from his abdomen. Moreover, one witness testified that during the altercation he screamed that Himmons had been stabbed.

It is a well established legal principle that where conflicting evidence exists, the trier of fact is free to "believe all, part, or

none of the evidence presented." *Commonwealth v. Miller,* 375 Pa.Super. 437, 447–48, 544 A.2d 1000, 1005 (1988). Therefore, based on the evidence presented, the trial court could have reasonably concluded that Anthony entered into the fray with the knowledge that Himmons had been stabbed by Jerry. Such a finding would establish that Anthony understood the nature of the encounter between Jerry and Himmons and acted with the intent of facilitating or promoting the murder of Himmons.

The focus of the second stage of the analysis is whether Anthony aided or attempted to aid his cousin in either planning or completing the crime. Generally, in order to find criminal liability the trier of fact must find that the accomplice actually aided the principal in the commission or planning of the crime. *See Commonwealth v. Smith,* 480 Pa. 524, 391 A.2d 1009 (1978); *Commonwealth v. Bridges,* 475 Pa. 535, 381 A.2d 125 (1977); *Commonwealth v. Darnell,* 179 Pa.Super. 461, 116 A.2d 310 (1955). The PCHA court stated that the Commonwealth failed to prove that Woodward contributed to Himmons's death and, therefore, he could not be considered an accessory to the murder. While it is true that the Commonwealth did not prove that Anthony's conduct aggravated Himmons's injuries or hastened his death, it should be noted that in Pennsylvania a person can be an accomplice to a crime if he aids or agrees or attempts to aid another in the commission of that crime. 18 Pa.C.S.A. § 306(c). The record indicates that Anthony knew when he entered the fight that Himmons had been stabbed. Thus, there was sufficient evidence at trial to establish that Anthony was attempting to aid his cousin Jerry in the murder of Himmons. *Taylor, supra.*

Regarding the conspiracy charge, Anthony contends that there was no evidence of an agreement between himself and Jerry as required to uphold a conviction of conspiracy. In support of this assertion, Anthony maintains that there is no evidence to suggest that he knew that he was going to meet Jerry in the bar that night, that he had any knowledge that Jerry was carrying a knife, or that his actions were anything but in defense of his cousin.

■ It is firmly established that a common understanding or agreement is the basis of a conspiracy. *Commonwealth v. Kennedy*, 499 Pa. 389, 395, 453 A.2d 927, 929 (1982). However, "(a)n explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Strantz*, 328 Pa. 33, 43, 195 A. 75, 80 (1937). Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. *Kennedy*, 499 Pa. at 395, 453 A.2d at 930. Anthony knew of the stabbing when he entered into the fight yet, as the testimony of the officer on the scene demonstrates, continued to strike Himmons about the head. Thus, while there was no evidence from which a formal agreement to commit murder could be found, the trier of fact, could find collusive behavior between Anthony and his cousin. Viewing the facts and all reasonable inferences derived therefrom in a light most favorable to the Commonwealth, we hold that there was sufficient evidence to support Anthony Woodward's convictions for first degree murder and conspiracy in the death of James Himmons. *Taylor, supra.*

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his next issue, Anthony contends that his trial counsel failed to present readily available exculpatory evidence, and, therefore, he was denied effective assistance of counsel. The evidence, which consisted of the testimony of four witnesses, contradicts the Commonwealth's assertion that Anthony chased and punched Himmons after the stabbing. Anthony argues that since the trial court's verdict was based upon a finding of his knowledge of the stabbing and his subsequent punching of Himmons, the presentation of this evidence at trial would have cast reasonable doubt on his guilt.

Our Supreme Court has authorized the following standard of review for claims of ineffective assistance of counsel:

In reviewing a claim of ineffective assistance of counsel, we must first determine whether the issue underlying the claim

has arguable merit. *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980). If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987). If, however, the claim has merit, we must then determine whether the course of action chosen by counsel has some reasonable basis designed to effectuate the client's interest. *Commonwealth v. Hentosh,* 520 Pa. 325, 554 A.2d 20 (1989). Finally, appellant must show that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991).

 To establish that counsel was ineffective for failing to investigate or call witnesses, appellant must show "(1) the identity of the witness, (2) that counsel knew of the existence of the witness, (3) the material evidence that the witness would have provided, (4) the manner in which the witness would have been helpful to his cause." *Commonwealth v. Polk,* 347 Pa.Super. 265, 273, 500 A.2d 825, 829 (1985). We feel that these elements have been sufficiently demonstrated by Anthony with regard to witnesses Ernest Fleet ("Fleet") and Aaron Beard. ("Beard")

During the PCHA hearing, Fleet, a longtime friend of Himmons, testified that Anthony did not punch Himmons during the altercation. He further stated that Himmons chased Anthony out of the bar, jumped on him, and demanded his glasses. A statement corroborating this testimony had been given to the police within hours of the murder. The testimony of this eyewitness casts doubt on the theory on which the prosecution proceeded; specifically, that Anthony struck Himmons with intent to kill.

Beard, also a friend of Himmons, testified at the PCHA hearing that he saw Himmons and Anthony rush out of the bar. Beard stated that he saw Himmons throwing punches but could not say whether Anthony had thrown any punches.

Both Fleet and Beard were identified as witnesses at the preliminary hearing. Additionally, during the PCHA hearing, trial counsel admitted his knowledge of the existence of these two witnesses at the time of trial.

We find that Anthony's underlying claim is of arguable merit since the omissions of counsel constitute highly questionable legal judgement in conducting the defense. *Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988). Trial counsel's failure to perform any investigation, to research the law regarding accomplice liability and conspiracy, and to present available exculpatory witnesses was revealed in his testimony to the PCHA court. Such omissions constitute, at the very least, highly questionable judgment. *Davis, supra.*

We must also determine whether counsel's decision not to call these witnesses had some reasonable basis designed to effectuate Anthony's interests. "(T)he balance tips in favor of finding effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis." *Pierce*, 515 Pa. at 158, 527 A.2d at 975.

At the PCHA hearing, Anthony's attorney claimed that he refrained from interviewing and calling Beard and Fleet as witnesses for three reasons. First, he saw no way Anthony could be convicted as there was "nothing" to any accomplice theory. Counsel stated that "I could have done absolutely nothing and Anthony should be acquitted." Second, trial counsel said he was "broke" and could not afford an investigator. Third, although he testified that he read the police reports, counsel decided not to interview the witnesses because he assumed they would be partial to the prosecution. Such reasons do not justify his failure to interview these witnesses, especially Fleet, an eyewitness who, within hours of watching his friend's murder, had given a statement to the police negating the prosecutions theory.

Counsel's testimony revealed a general lack of understanding regarding the elements of conspiracy and accomplice liability. Due to his general confusion regarding these areas of law, Anthony's attorney refrained from interviewing and calling to trial readily available witnesses who were friends of

Himmons, and whose testimony might have cast doubt on whether Anthony had struck Himmons at all. Given his misunderstanding of the law and the omissions that resulted therefrom, counsel's defense strategy here can hardly be considered reasonable.

Lastly, we must determine whether counsel's failure to question these witnesses prejudiced Anthony's defense. "This requires showing that counsel made errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Pierce*, 515 Pa. at 158, 527 A.2d at 975 (citations omitted).

Anthony's conviction was predicated upon a finding that he knew Himmons had been stabbed and that he subsequently chased and punched Himmons, thereby contributing to his death. Portions of both Fleet's and Beard's testimony cast doubt on such a finding. We acknowledge that there are inconsistencies between the testimonies of these two witnesses and Anthony's testimony. However, we also recognize that in an altercation such as the one that transpired here, conflicting versions of the crime will often occur. Fleet's testimony here negates the theory upon which the Commonwealth relies, specifically, that Anthony chased and punched Himmons. This testimony was damaging to the Commonwealth's case and should have been presented to the trial judge. Since this exculpatory evidence was not presented at trial, Anthony's right to a fair and reliable trial was severely hampered. *Pierce, supra.*

At the preliminary hearing, Emanuel Rose, ("Rose") another companion of Himmons, testified that Himmons chased Anthony out of the bar. At trial however, Rose stated that he lost track of Himmons and Anthony, as his attention was focused on the knife which Jerry was wielding. Trial counsel's failure to question Rose about the discrepancies in his testimony magnifies the prejudicial nature of the trial. Counsel's error here also demonstrates his misunderstanding and mishandling of the case. Had Anthony's attorney been cognizant of the importance of the order in which Anthony and Himmons left the bar, he would have brought this matter to the attention of the court.

Anthony also asserts that defense counsel neglected to conduct any pre-trial investigation which would have led to the discovery of two disinterested witnesses, Antrion Freeman and Reginald Marsh, who were standing outside the bar when the fight occurred. At the PCHA hearing they testified that it was Himmons who was attacking Anthony outside the bar. This testimony would tend to show that Anthony was not the aggressor here and, therefore, he did not possess the requisite intent to kill. Moreover, this testimony would have directly contradicted the testimony of Police Officer Stewart and Ernest Hilbert, two Commonwealth witnesses upon whom the trial judge based her finding of guilt.

Counsel's lack of understanding concerning the theories of accomplice liability and conspiracy led him to believe that there was no conceivable way Anthony could be convicted. As a result, he undertook no investigation outside of questioning those witnesses who could testify that Jerry and not Anthony stabbed Himmons. We do not agree with Anthony's contention that the testimonies of Freeman and Marsh are of such a nature that a different verdict would result if a new trial was granted. Nor can it be concluded that his attorney knew of the existence of these witnesses as is necessary for a finding of ineffective counsel here. *Polk, supra.* However, the PCHA testimony of these two bystanders underscores defense counsel's failure to conduct any investigation which might have led to potentially exculpatory evidence, and is indicative of the inadequate defense given to Anthony.

It is evident from the foregoing that Anthony's right to a fair trial was surely undermined by an attorney who negligently refrained from investigating witnesses and ultimately failed to present readily available exculpatory evidence. Due to the resulting prejudice suffered by Anthony, a new trial is warranted. *Pierce, supra.*

## III. COMMONWEALTH'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

Anthony's next contention stems from the testimonies of Fleet and Beard at the PCHA hearing. Both witnesses claimed that during the preliminary hearing they told an

assistant district attorney that they saw Himmons attacking Anthony. Anthony contends that the alleged failure of the prosecutor to disclose this exculpatory evidence constituted a violation of due process under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Anthony has produced no evidence to support Beard and Fleet's allegations that they gave statements to the assistant district attorney and to police detectives other than the police reports mentioned herein. The assistant district attorney who represented the Commonwealth at the preliminary hearing testified that he recalled no contact with either of these parties during the hearing. Additionally, the detectives who handled the pre-trial investigation testified that except for the statement made after the murder, Fleet never indicated that Himmons attacked Anthony.

The record does not reveal that the Commonwealth withheld any evidence to the defense. Consequently, we cannot find that Anthony has been denied due process under the rule of *Brady, supra.* As we have resolved that Anthony should be given a new trial, his remaining issues are moot, and we therefore will not address them.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.