J-A11030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LUIS E. CHAVES | : | |
| Appellant | : | No. 841 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 22, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001583-2023

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED: AUGUST 18, 2025**

Appellant, Luis E. Chaves, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury trial convictions for altered, forged or counterfeit documents and plates, theft by deception, tampering with public record or information, and unsworn falsification to authorities.[1] We affirm.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellant with the aforementioned offenses in connection with Appellant's procurement and/or use of a fraudulent Pennsylvania identification card, Pennsylvania title, license plate, and insurance, for a vehicle purchased by Salvador Lucio.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 7122; 18 Pa.C.S.A. §§ 3922(a); 4911(a); and 4904(a), respectively.

The matter proceeded to a jury trial that commenced on March 18, 2024. Salvador Lucio testified that he is a Mexican citizen and had been living in the United States illegally since 2005. He did not have a Pennsylvania license or an identification card. Mr. Lucio did not own a car until he purchased a Ford Explorer on Facebook Marketplace from a seller in New Jersey. Shortly thereafter, Mr. Lucio met with Appellant at Appellant's residence for assistance to transfer the title to his name and acquire a Pennsylvania license plate. Mr. Lucio testified that when he met Appellant, he was very unfamiliar with the process to acquire the documentation for a vehicle. Mr. Lucio gave Appellant the title to the vehicle that he received from the seller. When he gave the title to Appellant, it contained the seller's signature but did not have Mr. Lucio's signature on it. The Commonwealth presented a copy of the title as Exhibit 1. Mr. Lucio noted that the title had his name and signature on it but testified that he did not write it on the document.

Appellant also took a picture of Mr. Lucio and took identifying information from him. The Commonwealth presented a copy of a Pennsylvania ID card as Exhibit 2. Mr. Lucio testified that the ID card had his name, address, birthday, and other identifying features on it. He further testified that the photo on the ID card matched the photo that Appellant took of him. Mr. Lucio testified that he did not ask Appellant to procure the ID card for him, did not fill out any forms to procure the ID card, and did not at any point have the ID card in his possession. The Commonwealth further presented the MV-1 form that was filled out to obtain a Pennsylvania title and license plate for

the Ford Explorer. Mr. Lucio testified that although the form contained his name and address, he had never seen the form before and the signature on the form was not his. He further testified that he never appeared before the notary public, Reba Ranck, who notarized the form.

Mr. Lucio testified that Appellant charged him $300.00 for the picture and $850.00 to obtain the title and license plate for the vehicle, for a total of $1,150.00. Mr. Lucio testified that he was unfamiliar with the process to obtain the documentation for his vehicle or the fees associated with it. Mr. Lucio said he paid Appellant to obtain these documents for him, which he believed would allow him to drive his vehicle legally in Pennsylvania. He further testified that he went with Appellant to the office of Orlando Lavacca, a Farmers Insurance agent, to obtain insurance for the vehicle. Mr. Lucio denied that he showed Mr. Lavacca a Mexican driver's license but said he produced a Mexican consulate card as identification. On cross-examination, Mr. Lucio acknowledged that he never saw the fraudulent Pennsylvania ID card containing his information in Appellant's possession, and Mr. Lucio did not witness Appellant sign his name on any form.

Reba Ranck testified that she has been a notary public for 58 years. She was also a Pennsylvania tag and title agent for a period of time. She testified that an individual cannot obtain a Pennsylvania title to a vehicle without a Pennsylvania ID card. Ms. Ranck filled out the MV-1 form that was submitted to obtain the Pennsylvania title and license plate for the Ford Explorer. Appellant and a second individual came into her place of business with the

documentation for the transfer of title. She knew Appellant prior to this encounter because he had rented property from her previously. She did not know the second individual that walked in with Appellant. This individual represented that he was Salvador Lucio, but she could not identify him by photo because he was wearing a Russian style hat that came down to his eyes and a facemask. The man in the mask gave her a New Jersey title with the seller and Mr. Lucio's signatures on it. He further gave her the Pennsylvania ID card with Mr. Lucio's information and signed the paperwork as Salvador Lucio. Ms. Ranck processed the MV-1 form and sent it to the Pennsylvania Department of Transportation ("PennDOT"). On cross-examination, Ms. Ranck testified that Appellant had brought customers to her on five or six prior occasions, and she did not have any issues with those transactions. Ms. Ranck further testified that she did not recall seeing the Pennsylvania ID card in Appellant's possession and the masked individual provided the information for her to fill out the MV-1 form.

Pennsylvania State Trooper, Andew Revels, testified that PennDOT flagged Mr. Lucio's fraudulent ID and referred the case to the police. Trooper Revels ran the number on the fraudulent ID, and it was registered to an individual named Timothy Lee Wilt with an address, birth date, and identifying information that differed from Mr. Lucio. Trooper Revels interviewed Ms. Ranck, and she identified Appellant in a photo lineup as the individual that came in with the masked individual who provided her the fraudulent ID. She could not identify the masked individual. Trooper Revels testified that as a

result of his investigation, he could not conclude that Mr. Lucio was the masked individual that was present before Ms. Ranck, gave her the fraudulent ID, and signed the paperwork.

Appellant called Orlando Lavacca to testify. Mr. Lavacca testified that he owns an auto insurance business. Over the seven years that Mr. Lavacca has been operating his business, Appellant has referred nearly 100 customers to Mr. Lavacca. Mr. Lavacca did not have issues with any of the other customers that Appellant referred to him. Appellant and Mr. Lucio came to Mr. Lavacca to obtain auto insurance. Mr. Lavacca stated that Mr. Lucio showed him a Pennsylvania ID card and a Mexican driver's license. On the insurance application, Mr. Lavacca indicated that Mr. Lucio had a foreign driver's license. Mr. Lucio provided the relevant information for Mr. Lavacca to fill out the remainder of the application and Appellant only stepped in to translate when there was a language barrier. Before he left, Mr. Lucio paid for the insurance policy with a credit card.

Appellant testified that a friend connected him with Mr. Lucio because Mr. Lucio needed assistance to register his vehicle. When he spoke with Mr. Lucio, Appellant informed Mr. Lucio that he would need a Pennsylvania ID and a Mexican driver's license to acquire insurance, title and license plates for the vehicle. Appellant testified that the first time that he met Mr. Lucio was at Mr. Lavacca's place of business for auto insurance. Mr. Lucio provided Mr. Lavacca with a Pennsylvania ID and a Mexican driver's license. Appellant testified that this was the first time he saw Mr. Lucio's Pennsylvania ID.

Appellant denied that he took the photo on the ID or participated in any manner in obtaining the ID for Mr. Lucio. Appellant further testified that Mr. Lucio showed him the New Jersey title to the vehicle at Mr. Lavacca's office. Appellant informed Mr. Lucio that the title needed to be signed by the seller and Mr. Lucio. Mr. Lucio called Appellant a few weeks later and told him that the title was signed. Appellant went with Mr. Lucio to Ms. Ranck's business. Appellant testified that he introduced Mr. Lucio to Ms. Ranck but took no further part in the process. Appellant denied that Mr. Lucio paid him $1,150.00. Appellant said he charged Mr. Lucio $100.00 for his assistance.

During the charge to the jury, the court instructed the jury on accomplice liability. The jury found Appellant guilty of all charges. On March 28, 2024, Appellant filed a timely post-trial motion, which included a motion for judgment of acquittal based on insufficiency of the evidence and a motion for a new trial based on after-discovered evidence. In support of his motion for a new trial, Appellant attached an affidavit from Mr. Lavacca stating that he found a copy of the Mexican driver's license that Mr. Lucio presented to him. Additionally, Appellant attached an affidavit from Jose Villalba, which stated that Mr. Lucio acquired the fraudulent ID from an individual known as "El Cholo." The court denied the post-trial motion on April 16, 2024 without a hearing.

On May 22, 2024, the court conducted a sentencing hearing. At the hearing, Appellant requested the court to reconsider his post-trial motion, and the court heard argument from both parties. In explaining how Appellant

came to learn that Mr. Villalba had relevant information, Appellant's counsel represented the following to the court:

> [O]ne of the things that [Appellant's] done for many years is work for associations where they hand out food. It just so happened about a week or so after the verdict, one of the people said to [Appellant], how did you make out? And he says, well, I got convicted. And he said, how did that happen? He said, well, this fellow, Lucio, testified that I took his picture and that picture eventually ended up on a phony PA ID card. And he says, that's not true, that's – this fellow said it's simply not true. I, meaning that fellow, picked up a Lucio, asked him to pick up a guy named El Cholo, bring El Cholo over there. El Cholo apparently is in that business of making up phony driver's licenses, phony ID cards and whatnot. And it's this fellow, El Cholo, that took the picture.

(N.T. Sentencing Hearing, 5/22/24, at 4). The court denied Appellant's motion to reconsider and sentenced Appellant to an aggregate term of two years' probation and $499.00 in restitution. On June 14, 2024, Appellant filed a timely notice of appeal. On June 17, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) by July 8, 2024. On July 1, 2024, Appellant filed a concise statement. On August 2, 2024, Appellant filed an untimely supplemental concise statement.

Appellant raises the following issues for our review:

> Whether the trial court abused its discretion by giving a jury instruction designating Appellant as an accomplice with persons unknown?

> Whether the trial court erred in refusing to give a jury instruction requested by Appellant that, under the facts of this case, the alleged victim was an accomplice to one or

more of the misdemeanors with which Appellant was charged (and ultimately convicted) and thus that his testimony should be deemed as coming from a corrupt source and given careful scrutiny by the jury?

Whether the trial court erred in denying Appellant's omnibus post-trial motion including his motion for judgment of acquittal where the evidence adduced at trial was insufficient or too conflicting to convict Appellant?

Whether the trial court erred in denying Appellant's omnibus post-trial motion including his motion for a new trial (which was supported by third-party affidavits) summarily and without an evidentiary hearing?

(Appellant's Brief at 10) (reordered for purpose of disposition).

Preliminarily, "[a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." **Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa.Super. 2010). "Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary." **Id. See also** Pa.R.Crim.P. 647(c) (stating: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate").

Additionally, issues not raised in a timely Pa.R.A.P. 1925(b) concise statement will be deemed waived for appellate review. **Commonwealth v. Castillo**, 585 Pa. 395, 888 A.2d 775 (2005). Where an appellant seeks to supplement a timely filed Rule 1925(b) statement, the "appellant must petition the trial court [for leave to file a supplemental concise statement], set

forth good cause for an extension of a specific amount of time in which to file the statement, and obtain an order granting the request for the extension before the issues raised in an untimely 1925(b) statement will be preserved for appeal to this Court." ***Commonwealth v. Woods***, 909 A.2d 372, 378 (Pa.Super. 2006), *appeal denied*, 591 Pa. 714, 919 A.2d 957 (2007). Thus, issues raised in an untimely supplemental concise statement, filed without leave of court, are not preserved for appeal. ***Id.***

Instantly, in his first issue, Appellant asserts that the trial court erred by instructing the jury on accomplice liability. Nevertheless, Appellant failed to raise an objection to the jury charge on the record at trial.[2] After instructing the jury, the court inquired whether any party had objections to the jury instructions, and Appellant's counsel answered in the negative. (***See*** N.T. Trial, 3/19/24, at 245). As such, Appellant has not preserved this issue for our review. ***See Moury, supra***.

In his second issue, Appellant claims that the court erred in failing to give a requested jury instruction on scrutiny for testimony from a corrupt source with respect to Mr. Lucio's testimony. However, Appellant failed to include this issue in his timely filed Rule 1925(b) concise statement. Rather, Appellant included this issue in a supplemental concise statement that was untimely filed on August 2, 2024. Notably, Appellant did not seek, and the

---

[2] Appellant claims in his brief that he objected to the inclusion of the accomplice liability jury instruction during an off the record conversation with the court. Nevertheless, there is no support on the record for Appellant's assertion.

- 9 -

court did not grant, permission or an extension of time to file a supplemental concise statement. As a result, the court did not address this issue in its Rule 1925(a) opinion. Thus, Appellant's inclusion of this issue in an untimely filed supplemental concise statement has not preserved it for our review and his second issue is waived. ***See Woods, supra***.

In his third issue, Appellant contends that the Commonwealth's evidence at trial was insufficient to establish that his actions constituted a violation of the offenses of which he was convicted. Specifically, Appellant asserts that the Commonwealth's evidence establishes only that Appellant referred Mr. Lucio to Mr. Lavacca's and Ms. Ranck's businesses, and Appellant was merely present with Mr. Lucio during those transactions. Appellant claims that the Commonwealth's evidence confirmed that Appellant did not present the fraudulent ID, give information, fill out, or sign any of the forms that were submitted to PennDOT. Appellant argues that even viewed in the light most favorable to the Commonwealth, the evidence demonstrates that he was merely present with Mr. Lucio and may have had a passive knowledge that the ID was fraudulent, which is insufficient to convict him of the crimes at issue. Appellant concludes that the evidence was insufficient to sustain his convictions, and this Court should vacate his judgment of sentence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency

claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa.Super. 2013)). Further, "[c]redibility of witnesses and the weight of the evidence produced is within the province of the trier of fact, who is free to believe all, part or none of the evidence." ***Commonwealth v. Kitchen***, 162 A.3d 1140, 1144 (Pa.Super. 2017).

The Motor Vehicle Code defines altered, forged or counterfeit documents and plates, in relevant part, as follows:

**§ 7122. Altered, forged or counterfeit documents and plates**

- 11 -

A person is guilty of a misdemeanor of the first degree if the person, with fraudulent intent:

\* \* \*

(3) has possession of, sells or attempts to sell, uses or displays a certificate of title, registration card or plate, driver's license, inspection certificate proof of financial responsibility or any other document issued by the department, knowing it to have been altered, forged or counterfeited;

\* \* \*

75 Pa.C.S.A. § 7122.

Additionally, the Crimes Code defines theft by deception, tampering with public records and unsworn falsification to authorities, in relevant part, as follows:

**§ 3922. Theft by deception**

**(a) Offense defined.**—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

\* \* \*

18 Pa.C.S.A. § 3922(a).

**§ 4911. Tampering with public records or information**

**(a) Offense defined**.—A person commits an offense if he:

(1) knowingly makes a false entry in, or false alteration

- 12 -

of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government;

(2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection; or

\* \* \*

18 Pa.C.S.A. § 4911(a).

### § 4904. Unsworn falsification to authorities

**(a) In general.**—A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:

(1) makes any written false statement which he does not believe to be true;

(2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or

(3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false.

18 Pa.C.S.A. § 4904(a).

Additionally:

[A] defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor. *See* 18 Pa.C.S.[A.] § 306; *see also Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688, 690 (1978) (the actor and his accomplice share equal responsibility for commission of a criminal act). A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii)

- 13 -

aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S.[A] § 306; ***Commonwealth v. Spotz****,* 552 Pa. 499, 716 A.2d 580, 585 (1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." ***See Commonwealth v. Woodward****,* [614 A.2d 239, 242 (Pa.Super.] 1992). First, there must be evidence that the defendant intended to aid or promote the underlying offense. ***See id.*** Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. ***See id.*** While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. ***See Commonwealth v. Wagaman****,* [627 A.2d 735, 740 (Pa.Super.] 1993). There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. ***See id.*** With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime. ***See Commonwealth v. Cox****,* 546 Pa. 515, 686 A.2d 1279, 1286 (1997).

***Commonwealth v. Murphy***, 577 Pa. 275, 285-86, 844 A.2d 1228, 1234 (2004).

Instantly, the trial court determined that the Commonwealth presented sufficient direct and circumstantial evidence of Appellant's direct involvement or involvement as an accomplice to sustain his convictions. Specifically, the court explained:

[T]he Commonwealth showed evidence that Appellant intentionally received money from Salvador Lucio, which had been rightfully in Mr. Lucio's possession, under the pretenses of providing a legitimate vehicle registration for Mr. Lucio. The Commonwealth also showed evidence that Appellant, with the assistance of unknown accomplices, obtained a forged Pennsylvania driver's license with Mr. Lucio's information, knew that the license had been forged,

and intended to use it to defraud Mr. Lucio and the Pennsylvania state government. The Commonwealth then showed that Appellant submitted several [PennDOT] forms using information from the forged license — which he knew had been forged — to a public notary, who, as part of the official functions of her position, notarized the documents as authentic. The Commonwealth showed that these falsified documents, that Appellant well knew were false, were received by PennDOT and, being considered as legitimate government records by that department, were used to issue an illegitimate vehicle registration plate in Mr. Lucio's name.

(Trial Court Opinion, 8/19/24, at 3-4) (unpaginated). The record supports the court's analysis. **See Sebolka, supra**.

The Commonwealth's theory at trial was that Appellant took money from Mr. Lucio, procured a fraudulent Pennsylvania ID for him, and used this fraudulent ID with an accomplice to apply for a Pennsylvania title and license plate for Mr. Lucio's vehicle. In support, the Commonwealth presented Mr. Lucio's testimony that Appellant promised to procure a legal Pennsylvania title and license plate for his vehicle and charged Mr. Lucio $1,150.00 for this purpose. As such, there was sufficient evidence for the jury to find that Appellant took money from Mr. Lucio under the false pretense that he could provide legal documentation for Mr. Lucio's vehicle, which establishes the elements for Appellant's theft by deception conviction. **See** 18 Pa.C.S.A. § 3922(a).

Mr. Lucio further testified that Appellant took a photograph of him and collected identifying information that is typically found on a Pennsylvania ID. Trooper Revels testified that a fraudulent Pennsylvania ID with Mr. Lucio's

photo and information on it was used to fill out an MV-1 form and sent to PennDOT. Mr. Lucio confirmed that the photo on the fraudulent ID was the same photo that Appellant took of him. Viewed in the light most favorable to the Commonwealth as the verdict winner, there was enough circumstantial evidence for the jury to find that Appellant procured a fraudulent Pennsylvania ID for Mr. Lucio, which is sufficient to sustain Appellant's convictions for altered, forged or counterfeit documents and plates, and tampering with public records. *See* 75 Pa.C.S.A. § 7122; 18 Pa.C.S.A. § 4911(a).

The Commonwealth also presented evidence that Appellant and an unknown accomplice took the fraudulent ID and used it to give false information to Ms. Ranck for the purpose of submitting an MV-1 form to PennDOT. Ms. Ranck testified that Appellant came in with an individual who represented himself to be Mr. Lucio. However, she testified that she could not definitively identify the masked individual as Mr. Lucio because the individual had a hat down to his eyes and a mask covering his face throughout their interaction. Additionally, Mr. Lucio testified that he had never been to Ms. Ranck's business and had never seen or possessed the fraudulent ID with his information on it prior to the commencement of this case. Mr. Lucio testified that he was unfamiliar with the process of legally acquiring a Pennsylvania title and license plate for his vehicle and fully entrusted the process to Appellant after paying him and providing him with a photo and the relevant information. The jury was free to credit Mr. Lucio's testimony. *See Kitchen,*

*supra*.

Appellant is correct that Ms. Ranck testified that the masked individual, and not Appellant, gave her the fraudulent ID, provided her with Mr. Lucio's information, and signed the relevant paperwork that she submitted to PennDOT. Nevertheless, Ms. Ranck confirmed that Appellant came in with the masked individual, introduced her to the masked individual, and stayed with them for the full transaction. Taken together with Mr. Lucio's denial that he was the masked individual and testimony regarding Appellant's involvement in procuring the fraudulent ID, there was sufficient circumstantial evidence for the jury to find that Appellant worked with an unknown accomplice with the intent to submit falsified documents to PennDOT and actively participated in the commission of that offense. *See Murphy, supra*. As such, the totality of the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Appellant's conviction for unsworn falsification to authorities. *See* 18 Pa.C.S.A. § 4904(a). On this record, the evidence was sufficient to sustain Appellant's convictions. *See Sebolka, supra*.

In his fourth issue, Appellant argues that the court "assessed the actions of Appellant's trial counsel harshly and unfairly, [in determining] that counsel had not moved diligently before trial to obtain the newly acquired or discovered evidence supporting the motion for [a] new trial." (Appellant's Brief at 20). Appellant claims that Appellant's counsel subpoenaed Mr.

- 17 -

Lavacca to produce all documents from Mr. Lucio's insurance policy and Mr. Lavacca was unable to locate the copy of the Mexican driver's license until after the trial. Appellant further asserts that neither Appellant nor Appellant's counsel had any knowledge or control over Mr. Villalba. Appellant claims that he supported his motion with affidavits and the court should have held an evidentiary hearing to probe into the veracity of Appellant's evidence. Appellant concludes that the court erred in denying his motion for a new trial without an evidentiary hearing, and this Court should remand for further proceedings. We disagree.

"In reviewing the decision of a trial court to grant a new trial based on after-discovered evidence, this Court asks only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Griffin*, 137 A.3d 605, 608 (Pa.Super. 2016), *appeal denied*, 638 Pa. 525, 157 A.3d 476 (2016) (citation and quotation marks omitted). "If a trial court erred in its application of the law, an appellate court will correct the error." *Id.*

To receive a new trial based on after-discovered evidence, a petitioner must satisfy a four-part test requiring

> the petitioner to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Small*, 647 Pa. 423, 442, 189 A.3d 961, 972 (2018)

(citing *Commonwealth v. Pagan*, 597 Pa. 69, 106, 950 A.2d 270, 292

(2008), *cert. denied*, 555 U.S. 1198, 129 S.Ct. 1378, 173 L.Ed.2d 633

(2009)). "The test is conjunctive; the [petitioner] must show by a

preponderance of the evidence that each of these factors has been met in

order for a new trial to be warranted." *Commonwealth v. Padillas*, 997

A.2d 356, 363 (Pa.Super. 2010), *appeal denied*, 609 Pa. 687, 14 A.3d 826

(2010).

Regarding the reasonable diligence that is required, this Court has

explained:

> To obtain a new trial based on after-discovered evidence,
> the petitioner must explain why he could not have produced
> the evidence in question at or before trial by the exercise of
> reasonable diligence. … A defendant cannot claim he has
> discovered new evidence simply because he had not been
> expressly told of that evidence. Likewise, a defendant who
> fails to question or investigate an obvious, available source
> of information, cannot later claim evidence from that source
> constitutes newly discovered evidence. The concept of
> reasonable diligence is particularly relevant where the
> defendant fails to investigate or question a potential witness
> with whom he has a close, amicable relationship. … Absent
> a plausible explanation for the failure to discover the
> evidence earlier, evidence obtained after trial should not be
> deemed "after-discovered"; to allow the defendant to claim
> information actually or constructively within his knowledge
> and available to him is after-discovered.

*Id.* at 363-64 (citations omitted).

"Further, a defendant seeking a new trial must demonstrate he will not

use the alleged after-discovered evidence solely to impeach the credibility of

a witness." *Id.* at 365 (citation omitted). "Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment." *Id.* Additionally:

> [T]he defendant must also show the alleged after-discovered evidence is not just corroborative or cumulative of the evidence already presented at trial. Whether new evidence is corroborative or cumulative in this context depends on the strength of the other evidence supporting the conviction. New evidence to support a defendant's claim of innocence is less likely to be deemed cumulative if the conviction is based largely on circumstantial evidence. Where the new evidence, however, supports claims the defendant previously made and litigated at trial, it is probably cumulative or corroborative of the evidence already presented.

*Id.* at 364-65 (citations omitted).

Here, the trial court determined that Appellant failed to demonstrate that the evidence presented in Mr. Lavacca and Mr. Villalba's affidavits could not have been obtained before trial with the exercise of reasonable diligence. *See Small, supra*. Regarding Mr. Lavacca's affidavit, the court noted that Mr. Lavacca testified on Appellant's behalf at trial and reasonable trial preparation and follow-up would have produced the copy of Mr. Lucio's Mexican driver's license before trial. *See Padillas, supra*. Additionally, Appellant fails to allege that this evidence has any relevance other than to impeach Mr. Lucio's testimony. *Id.* Notably, Appellant acknowledges in his brief that the only significance of this evidence is to "[prove] that Mr. Lucio committed perjury on the witness stand when he denied that he had presented his Mexican license to obtain automobile insurance in Pennsylvania."

(Appellant's Brief at 18).

Regarding Mr. Villalba's affidavit, Appellant fails to assert any efforts he or his counsel undertook to seek or obtain this evidence prior to trial. The record demonstrates that Appellant knew Mr. Villalba from interactions at a community organization that he has worked with for many years. Appellant's counsel further represented to the court that Mr. Villalba told Appellant the relevant information when he asked Appellant how trial went and Appellant informed Mr. Villalba that Appellant was convicted. Appellant does not provide any reasonable explanation why Appellant could not have learned this information from Mr. Villalba prior to trial. Additionally, the information in Mr. Villalba's affidavit largely serves only to impeach Mr. Lucio's testimony that Appellant took the photo of him that was on the fraudulent ID and to corroborate Appellant's own testimony that he did not take the photo. **See Padillas, supra**.

On this record, the information in Mr. Lavacca and Mr. Villalba's affidavits cannot satisfy the four-prong test to qualify as after-discovered evidence warranting a new trial. **See Small, supra**. As such, we discern no error in the court's denial of Appellant's motion for a new trial without holding an evidentiary hearing to probe into the veracity of Appellant's proffered after-discovered evidence. **See Griffin, supra**. Accordingly, Appellant is not entitled to relief on any of his issues on appeal and we affirm.

- 21 -

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025